**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at PIKEVILLE**

**CIVIL ACTION NO. 05-314-DLB**

**KATHY FAINE**                                                                                        **PLAINTIFF**

**vs.**                             **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                          **DEFENDANT**

*******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth below, hereby reverses and remands the Commissioner's decision.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Kathy Faine filed an application for Supplemental Security Income (SSI) payments on August 6, 2003. (Tr. 116-20)[1] Plaintiff alleges she became unable to work on August 6, 2003, due to carpal tunnel syndrome, diabetes, hypertension, fluid retention, depression, nerves, panic attacks, migraine headaches, numbness and tingling in her hands, and neck pain. (Tr. 122) Plaintiff's claim was denied initially and on reconsideration. (Tr. 122-25; 127-30) She requested a hearing before an ALJ, which was held on March 9, 2005, in Prestonsburg, Kentucky. (Tr. 387-413)  On July 26, 2005, ALJ Chwalibog ruled that Plaintiff was not entitled to SSI benefits. (Tr. 12-18)  This decision became the final

---

[1]Plaintiff concurrently filed an application for Disability Insurance Benefits, but her later request to dismiss that claim was granted by the administrative law judge (ALJ). (Tr. 12, 17, 390)

decision of the Commissioner when the Appeals Council denied review on September 20, 2005. (Tr. 4-6)

On October 6, 2005, Plaintiff filed the instant action. The matter has culminated in cross motions for summary judgment, which are now ripe for review.

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Secretary of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336

F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 13) At Steps 2 and 3, the ALJ found only Plaintiff's carpal tunnel syndrome to be a severe impairment. (Tr. 14)  However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments severe enough to meet or medically equal any listed impairment in Appendix 1, Subpart P, Regulation No. 4. (*Id.*)

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform light exertional work; that is, lifting and/or carrying 20 pounds occasionally and 10 pounds frequently.  The ALJ also found that she can only occasionally use her hands for gross manipulation of both upper extremities. (Tr. 15)  The ALJ determined that given her RFC, Plaintiff could not return to her past relevant work as a head teller. (Tr. 16)

The ALJ therefore proceeded to the final step of the sequential evaluation.  At Step 5, the ALJ found there were a significant number of jobs available to Plaintiff in both the national and regional economies despite her limitations. (Tr. 18)  This conclusion resulted from testimony by a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age (43 at the time of the hearing and so a "younger" individual), education (high school), past relevant work experience (skilled), and RFC.  The VE testified that Plaintiff could be employed at the light exertional level as a gate attendant or office messenger; and at the sedentary level as a surveillance system monitor or night watchman. (Tr. 409)  Since these were positions of significant number in both the regional

and national economies, the ALJ concluded Plaintiff was not disabled under the Social Security Act. (Tr. 17)

**C.  Analysis**

Plaintiff raises four points in her appeal.  One, that the ALJ failed to address the opinions offered by Dr. Scott Lance, described by Plaintiff as her treating psychiatrist.  Two, that the ALJ erred in concluding her mental impairment is non-severe.  Three, that the ALJ, in addressing the opinions of Dr. Wayne Ross Edwards and presenting those opinions to the VE, failed to comply with the requirements of SSR 96-8p.  And four, that the ALJ failed to address the vocational expert opinions of D. Joe Woolwine submitted by Plaintiff post-hearing.  Because the record in this case evidences the ALJ's review of Plaintiff's mental impairments was inadequate and so conclusions related thereto were not supported by substantial evidence, remand for further assessment is required.

<u>ALJ's Consideration of Plaintiff's Mental Impairment</u>.  ALJ Chwalibog determined, at step two of the sequential analysis, that "claimant's complaints of nerves are non-severe." (Tr. 13) His written decision reflects this conclusion was reached upon review of the records of Plaintiff's treating physician, Dr. Blake Burchett, and the September, 2003 consultative examination by Dr. Wayne Ross Edwards. (Tr. 13, 15) The ALJ notes that although Dr. Edwards concluded after examination that Plaintiff would have some difficulties completing an eight-hour workday, five days a week, without psychiatric symptoms, Plaintiff also gave Dr. Edwards a history of being able to get along with work supervisors and peers. (Tr. 15) This, combined with the fact that Plaintiff had begun receiving treatment from a mental health professional only recently before the hearing, are

noted by the ALJ as his reasons to support his finding that Plaintiff's nerve complaints are non-severe. (Tr. 13)

To constitute a "severe impairment," an impairment or combination of impairments must significantly limit a claimant's ability to do basic work activity. *See* 20 C.F.R. §§ 416.920(c), 416.921. It "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [claimant's] statement of symptoms." 20 C.F.R. § 416.908. On the other hand, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988). Applying these legal principles, the decision fails to explain how the ALJ's conclusion on this point is supported by substantial evidence, and the Court's review of the record evidence relating to Plaintiff's non-physical complaints suggests contrary information not discussed by the ALJ, the weight and relevancy of which this Court will not speculate upon.

The ALJ's consideration of the record evidence overlooks at least a few salient points on Plaintiff's asserted mental impairments. ALJ Chwalibog details that Dr. Burchett's August 23, 1999, office note states Plaintiff's nerves and palpitations are better with increased Effexor. (Tr. 13) This is, however, but one entry in a course of care and treatment by Dr. Burchett over the time period from May, 1997 until January, 2000. In this interval Plaintiff complained at numerous visits of depression, anxiety, panic episodes, crying, and tension headaches. (Tr. 205-28) She also told Dr. Burchett in late 1998 that she was afraid

5

to see a psychiatrist (tr. 219), which is consistent with her hearing testimony (tr. 394). Plaintiff took various prescription medications over an extended period of time for these complaints, as prescribed by Dr. Burchett, including Paxil, Zoloft, and Effexor.

In addition to the course of Dr. Burchett's care, the ALJ's consideration of this issue also lacks any discussion of Plaintiff's post January, 2000 care and treatment by Harold Primary Care – Dr. Debra K. Hall and Wilma Leslie, F.N.P.C. Those medical records reflect regular care and treatment from March of 2000 until February of 2005 for complaints of depression, nerves, crying, feeling anxious and/or panicky, stress, and headaches. She was prescribed various medications for these symptoms on a regular basis, including Zoloft, Effexor, and Wellbutrin, and was continuing to take medication at the time of the hearing. (Tr. 308-60, 368-80) The ALJ's decision contains essentially no reference to these Harold Primary Care records, aside from his notation in another section of the decision that this treating source provided no functional assessment of Plaintiff's *physical* abilities. (Tr. 15)

Shortly before the hearing, Plaintiff was seen by psychiatrist Dr. Scott Lance. In addition to a February 7, 2005, initial visit, Plaintiff was seen again by him post-hearing on March 21, 2005. At that time Dr. Lance also completed a Medical Assessment of Ability to do Work-Related Activities (Mental), and his records were submitted to the ALJ prior to decision. (Tr. 382-86) The ALJ does not discuss Dr. Lance's involvement and opinions in any detail. He merely remarks that "claimant has only a recent history of mental health treatment from a mental health facility, psychiatrist, psychologist, or hospital" (tr. 13), and subsequently cites to the exhibit number corresponding to Dr. Lance's notes, but in the context of an unrelated discussion of Plaintiff's diabetes (tr. 13). Plaintiff submits this failure

alone constitutes reversible error, since weight attributed to treating physician opinion evidence must be explained in the ALJ's decision. *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541 (6th Cir. 2004). The Commissioner contends that Dr. Lance is an evaluating, rather than treating source, and that it is reasonable to infer that the ALJ disregarded Dr. Lance's opinions. But regardless of whether Dr. Lance qualifies as a treating source as defined in 20 C.F.R. § 416.902, a point not addressed by the ALJ in his decision,[2] the lack of any comment about his examination findings and prescribed treatment, or his assessment opinions, cannot be overlooked, given the ALJ's failure to comment upon the record evidence associated with Plaintiff's mental impairments.[3]

Review of the record also reveals other non-medical evidence associated with Plaintiff's claimed mental impairments that was not elaborated upon by the ALJ. Specifically, the questionnaire completed by claimant repeatedly refers to limitations on coping and day-to-day functioning because of longstanding depression and anxiety. (Tr. 76-84) Plaintiff also submitted information from a longtime friend as to her observations of how Plaintiff's depression has impacted her lifestyle. (Tr. 85-93) Perhaps this information

---

[2]The ALJ's references are conflicting. He notes that Plaintiff only recently sought "mental health *treatment* from a mental health facility, psychiatrist, psychologist, or hospital" (tr. 13)(emphasis added), and also notes that Plaintiff testified she "began psychological *treatment* approximately five weeks prior to the hearing.... [and] will be seeing someone about once a month" (tr. 15)(emphasis added). These references suggest Dr. Lance is viewed as a treatment provider. However, in discussing Plaintiff's diabetes, the ALJ refers to Plaintiff having had a "psychiatric evaluation" (tr. 13), which suggests a non-treating relationship.

[3]This is true even were the ALJ to ultimately find Dr. Lance to be an examining or evaluating, rather than treating, physician. The regulations provide that "[u]nless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, *as the [ALJ] must do for any opinions from* treating sources, *nontreating sources,* and other nonexamining sources who do not work for us." 20 C.F.R. § 416.927(f)(2)(emphasis added).

was in fact considered by the ALJ as called for by 20 C.F.R. § 416.913(d). But given that Plaintiff's mental impairment was deemed non-severe at step two, at least some acknowledgment of this evidence by the ALJ and insight on his view of it would have been helpful. Instead, the ALJ's remarks are limited to her hearing testimony. (Tr. 14-15) He implies she is not credible by noting a perceived inconsistency in her testimony – that she referred to having tension headaches daily and then later testified she has headaches about twice a week. (Tr. 14) Plaintiff's testimony is not inconsistent on this point. She testified she has headaches daily. (Tr. 394) She reiterated this statement, and further testified she experiences migraine headaches specifically about twice a week. (Tr. 400-01)

Thus, there exists significant additional evidence related to Plaintiff's mental and stress-related complaints that simply was not addressed by the ALJ in the course of reaching his conclusion of non-severity. Indeed, this includes opinion evidence from non-examining state agency consultants. (Tr. 251-64)[4] At the hearing, when asked what keeps her from working, Plaintiff's first response was to identify her nerves and depression. (Tr. 393) Curiously, while the medical evidence documents reports of depression over several years and ongoing prescription medicines being given, the ALJ found this condition to be non-severe, yet found Plaintiff's carpal tunnel syndrome, referenced on but a few occasions and for which she was receiving no active treatment, to be severe.

---

[4]Dr. Jane Brake completed a Psychiatric Review Technique Form in October of 2003. Completion of this Form would have been without the benefit of the treating records from Harold Primary Care or the notes and evaluation by Dr. Lance. Dr. Brake's opinions seem to be derived primarily from her review of psychiatrist Dr. Wayne Ross Edwards' evaluative report. However, in concluding that Plaintiff's mental impairment was less than severe, Dr. Brake remarks that "Vendor [Dr. Edwards] opines that she has adequate mental function for a normal range of tasks" (tr. 263), but does not acknowledge or comment upon the impact, if any, of Dr. Edwards' further opinion that Plaintiff "[a]t this time ... would have some difficulties completing eight hours a day of work, five days a week, without psychiatric symptoms" (tr. 304).

In sum, there is abundant evidence of record pertaining to mental health complaints, some of it conflicting. While it is the ALJ's function to resolve conflicts in the evidence, *see* 20 C.F.R. §§ 416.927, 416.929, that resolution should be articulated. Otherwise, the Court is left to guess at whether the ALJ was aware of the evidence and the reasons why it was disregarded or given little or no weight, particularly at a step two "de minimis" consideration level. For this reason, the claim must be remanded.

<u>Vocational Expert Opinion</u>. Plaintiff also takes issue with the ALJ's reliance upon the vocational expert opinions offered at hearing. Plaintiff asserts those opinions are contrary to the dictates of SSR 96-8p.

As noted, Plaintiff underwent a psychiatric consultative examination in September, 2003 by Dr. Wayne Ross Edwards at the request of the state disability agency. (Tr. 298-305) Dr. Edwards diagnosed Plaintiff at that time as having a depressive disorder, not otherwise specified, and separation anxiety due to her children. (Tr. 303) In the conclusion section of his report, Dr. Edwards opined that "[a]t this time, the patient would have some difficulties completing eight hours a day of work, five days a week, without psychiatric symptoms, based on her current presentation, related to separation from children." (Tr. 304)

At hearing, the ALJ questioned the VE about Dr. Edwards' finding. That is, he asked the VE whether such an opinion would impact the jobs available to Plaintiff.

> Q. Okay. If an individual had some difficulties completing eight hours a day five days a week without psychiatric systems [sic - symptoms], would there be jobs?
>
> A. Your Honor, in response to that, some jobs are less than eight hours per day and are still considered to be full time jobs.

9

> Q. The jobs that you identified?
>
> A. Not all of them, but some of them would be less than eight hours.
>
> Q. Okay. But what I'm saying is, would an individual be able to complete the jobs that you identified at the light and sedentary level if they had some difficulties?
>
> A. Yes, they could.

(Tr. 409-10) Plaintiff challenges this opinion testimony and the ALJ's reliance upon it, as being violative of SSR 96-8p. That Ruling explains that an "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. Plaintiff points out that "regular and continuing basis" is defined by the SSR as "8 hours a day, for 5 days a week, or an equivalent work schedule," and therefore that the VE's interpretation of what is considered acceptable sustained full-time work does not comport with SSR 96-8p and so cannot be relied upon by the ALJ.

The VE's testimony on this point is somewhat confusing. Review of that portion of the testimony (tr. 409-12) reflects what appears to be the VE's focus upon the number of hours worked per week and its impact upon available jobs, while the ALJ's focus seemed to be directed to whether psychiatric symptoms resulting in some difficulties completing a regular workweek would reduce the number of available jobs. Plaintiff sought to supplement the record post-hearing on this point with the vocational opinions of D. Joe Woolwine (tr. 133-34), to the effect that interference of psychiatric symptoms on Plaintiff's ability to complete a substantial, gainful workweek would be such that it would render her unretainable.

A protracted discussion of this claimed error is unnecessary. Although the ALJ questioned the VE about this opinion by Dr. Edwards, the ALJ ultimately noted no limitations or restrictions in Plaintiff's RFC based upon what he concluded were her non-severe mental impairments.[5] His decision noted Dr. Edwards' opinion on this point, but he ultimately disregarded such a limitation after remarking that Dr. Edwards also noted Plaintiff "gave a history of getting along with supervisors and peers without exhibiting extreme behaviors and social interactions were appropriate in all settings." (Tr. 15)[6] Given that further review of the mental impairment evidence is warranted, clarification of the VE's opinions can be addressed at that time. Rather than belabor the topic, the ALJ and Plaintiff will have an opportunity to alleviate any confusion on this point in the course of remand.

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found not to be supported by substantial evidence and is hereby **REVERSED,** with this action **REMANDED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #5) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #4) is hereby **GRANTED.**

---

[5] The ALJ concluded that Plaintiff retained the residual functional capacity to perform light work, limited only by the fact that she can only occasionally use her hands for gross manipulation of both upper extremities. (Tr. 15)

[6] The use of this statement to disregard Dr. Edwards' observation is puzzling, given that this is a comment upon Plaintiff's previous *history* while she was in the workplace; whereas Dr. Edwards notes she would *at this time* have some difficulties completing a regular work schedule without psychiatric symptoms. (Tr. 304)

11

A Judgment reversing and remanding this matter will be entered contemporaneously herewith.

Dated this 13th day of March, 2007.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-314-Faine.MOO.wpd